UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DAVID L. EMERSON,

    Plaintiff,

    v.                                        Case No. 05-C-848

AEGIS LENDING CORPORATION,

    Defendant.

**DECISION AND ORDER GRANTING PLAINTIFF'S MOTION TO CERTIFY CLASS**

### I. BACKGROUND

The plaintiff, David L. Emerson ("Emerson") commenced this action on August 11, 2005 by filing a complaint naming Aegis Lending Corporation ("Aegis") as the defendant. In an amended complaint filed November 29, 2005, Emerson (and another plaintiff since dismissed) sets forth a single count alleging that Aegis accessed his consumer report without his consent or any lawful reason, in violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. ("FCRA"). According to Emerson, Aegis sent him a communication entitled "Official Pre-Qualification Notice" ("the Notice") which stated, " Congratulations! You have been pre-qualified† for $40,000 or more* from Aegis Lending." (Amend. Compl., Ex. A.) The small print and provisions on the back of the Notice further stated that "[a]ctual amount of credit may vary" and "[i]nformation contained in your credit file was used in preparing this offer."

Aegis answered the amended complaint and denies that it has violated the FCRA. Specifically, Aegis contends that the Notice constitutes a "firm offer of credit from Aegis." (Answer

at ¶ 7.) Title 15 U.S.C. § 1681b, which is entitled "Permissible purposes of consumer reports," provides, in pertinent part, that "[a] consumer reporting agency may furnish a consumer report relating to any consumer . . . in connection with any credit or insurance transaction that is not initiated by the consumer only if – (A) the consumer authorizes the agency to provide such report to such person; or (B)(i) the transaction consists of a firm offer of credit or insurance." 15 U.S.C. § 1681b(c)(1). Therefore, according to Aegis, because the Notice is a firm offer of credit, it had a permissible purpose to access Emerson's consumer report.

Emerson maintains, on the other hand, that the Notice does not constitute a firm offer of credit under the FCRA. Furthermore, Emerson alleges that Aegis willfully failed to comply with the requirements of the FCRA, and that he is therefore entitled to damages, including statutory damages of between $100 and $1000, pursuant to 15 U.S.C. § 1681n.

On January 25, 2006, the plaintiff filed a motion to certify a class in this action. The plaintiff seeks certification of a class consisting of "all persons with Wisconsin addresses to whom Defendant sent a solicitation in form of [the Notice] since November 20, 2004." (Pl.'s Br. at 3.) The plaintiff's motion for class certification is now fully briefed and is ready for resolution.

## II. DISCUSSION

There are four prerequisites to the maintenance of a class action. They are that: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

2

Once numerosity, commonality, typicality, and adequacy of representation are satisfied, the potential class must also satisfy at least one provision of Rule 23(b). *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). Here, the plaintiff relies on Rule 23(b)(3), which requires that "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

**A. Rule 23(a)**

According to the defendant, it sent a notice like the one sent to Emerson to over 106,000 individuals who reside in Wisconsin. (Def.'s Br. at 4.) Joinder of that number of individuals is impracticable. The plaintiff has therefore satisfied the numerosity requirement.

Moreover, this is a case where many of the operative facts are the same for each class member. The defendant accessed consumer information on each individual and sent them identical, or nearly identical, mailings. Therefore, there are questions of law or fact common to the class. The defendant's ordinary practices, i.e., practices involving accessing or causing to be accessed individuals' consumer information, is a question of fact common to the class members. Whether the Notice constitutes a firm offer of credit is a question of law common to the class. To be sure, the defendant argues that there are individualized questions of fact that predominate over the common questions. Predominance, however, pertains to the analysis under Rule 23(b)(3). For the purpose of Rule 23(a)(2), the existence of common questions of fact or law suffices. The plaintiff has therefore satisfied the commonality requirement.

Next is the issue of typicality. Rule 23(a)(3) "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of

the class at large. 'A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Moreover, "[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact." *Id*.

Here, Emerson's claim is that his consumer report was accessed by Aegis without any legal justification. His claim depends on the Notice he was sent not being a firm offer of credit. Each of the other members of the proposed class has a similar, if not identical claim. It may be that some members of the class are in slightly different situations; only a small percentage of the class contacted Aegis after getting the Notice, and an even smaller percentage actually applied for or received a loan. However, the essential nature of each class member's claim will be the same: that his or her consumer report was accessed although no firm offer of credit was made. Even if there are some factual differences, each class member has a similar legal theory. I am therefore satisfied that Emerson's claim is typical of the claims of the class members.

Finally, Rule 23(a)(4) requires that the representative parties will fairly and adequately protect the interests of the class. "[A]dequacy of representation is composed of two parts: 'the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest' of the class members. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993). "A class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Id*. "A class may not satisfy the requirements of Rule 23(a)(4) if the class representative does not 'possess the same interest and

suffer the same injury as the class members.'" *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). Thus, the court must ensure that "there is no inconsistency between the named parties and the class they represent." *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997)).

First, I am satisfied that the plaintiff's lawyers are adequate. The materials filed along with the motion to certify a class reveal that the law firm representing the plaintiff, Ademi & O'Reilly, LLP, has considerable experience in consumer litigation as well as in class action litigation.

The defendant argues that Emerson is an inadequate class representative because he has a conflict of interest with the rest of the class. Aegis argues that because there are 106,000 potential class members, and because statutory damages, should Aegis be found liable to the class, would be a minimum of $100 for each class member, the "minimum statutory damage award of $10.6 million" would exceed "the assets that would be available to satisfy a judgment." (Def.'s Br. at 37.) Therefore, according to Aegis, the class members would be competing for a limited pool of funds and Emerson would have an incentive to maximize his individual award at the expense of the class.

Aegis' argument is unavailing. The cases that Aegis cites in support of its assertion that a class representative is not adequate when the class members are "competing for a finite amount of damages" all address the situation where each class member claims damages in the form of lost market share in the same market. *See, e.g., Yeager's Fuel, Inc. v. Pennsylvania Power & Light Co.*, 162 F.R.D. 471, 478 (E.D. Pa. 1995). In that circumstance, a class representative's claim is necessarily adverse to the other class members' claims for the simple reason that there is only so much market share to go around. The larger share of the market that the representative asserts that it lost, the less that other class members could have lost. The same is not true of the class members'

5

claims here. If Emerson asserts that he suffered a certain amount of damages, that has no effect on the damages the other class members might have suffered. It may be that the class members ultimately will not be able to collect all of their damages because of Aegis' limited resources, but that does not mean that Emerson's claim is in conflict with the rest of the class's claims.

To be sure, there may be a temptation for Emerson to attempt to maximize his personal award, or for his attorneys to attempt to maximize fees, to the detriment of the class. This will be the case, however, whether the defendant's assets are limited or not. But such tensions are always present in class actions and do not prevent the certification of a class. In short, Emerson possesses the same interest, and claims to have suffered the same injury, as the class members. His claim is not inconsistent with or antagonistic to the claims of the class he seeks to represent. I therefore conclude that the plaintiff and his lawyers satisfy the requirements of Rule 23(a)(4).

**B. Rule 23(b)**

Having satisfied the prerequisites to class certification, Emerson must also establish that one of the provisions of Rule 23(b) is satisfied. Emerson relies on Rule 23(b)(3). In order to certify a class in this case, the court must therefore be satisfied that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Among the considerations that the court should assess in making the "predominance" and "superiority" determinations are: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the

6

particular forum; (D) the difficulties likely to be encountered in the management of a class action." *Id*.

"Framed for situations in which 'class-action treatment is not as clearly called for' as it is in Rule 23(b)(1) and (b)(2) situations, Rule 23(b)(3) permits certification where class suit 'may nevertheless be convenient and desirable.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (quoting Advisory Committee's Notes on Fed. Rule Civ. Pro. 23, 28 U.S.C. App., p. 697). "In adding 'predominance' and 'superiority' to the qualification-for-certification list, the Advisory Committee sought to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id*.

In adding Rule 23(b)(3), "the Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" *Amchem*, 521 U.S. at 615. "'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.'" *Id*. (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

It appears that the case at hand is exactly the type of case that Rule 23(b)(3) was intended to cover. There are a great number of class members, each of whom received an identical or nearly identical form letter, and whose potential damages are small. The actual damages sustained by each class member due to Aegis' accessing their consumer reports (if Aegis indeed violated the FCRA in doing so) would likely be nominal. Moreover, the statutory damages authorized by 15 U.S.C. §

7

1681n are also small, between $100 and $1000. Such potential recoveries do not provide a strong incentive for filing solo actions to protect individual rights. This is so even though attorney's fees are allowable in "successful" enforcement actions. 15 U.S.C. § 1681n(a)(3). The attorney's fees provisions may provide incentive for attorneys to accept solo actions in cases where there is a clear violation. However, where the law is not fully developed, and a "successful" outcome is therefore not certain, the incentive will disappear.

Nevertheless, Aegis has raised several arguments as to why class certification is not appropriate in this case, which arguments the court will now address. Aegis first argues that the class members who did not respond to the Notice (the vast majority of class members) do not have standing to pursue an action against Aegis. (Def.'s Br. at 14.) Aegis argues that all of the terms of a firm offer of credit do not need to be stated in an initial communication. The FCRA defines "firm offer of credit" as follows:

> The term "firm offer of credit or insurance" means any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer, except that the offer may be further conditioned on one or more of the following:
>
> (1) The consumer being determined, based on information in the consumer's application for the credit or insurance, to meet specific criteria bearing on credit worthiness or insurability, as applicable, that are established--
> (A) before selection of the consumer for the offer; and
> (B) for the purpose of determining whether to extend credit or insurance pursuant to the offer.
>
> (2) Verification
> (A) that the consumer continues to meet the specific criteria used to select the consumer for the offer, by using information in a consumer report on the consumer, information in the consumer's application for the credit or insurance, or other information bearing on the credit worthiness or insurability of the consumer; or

8

(B) of the information in the consumer's application for the credit or insurance, to determine that the consumer meets the specific criteria bearing on credit worthiness or insurability.

(3) The consumer furnishing any collateral that is a requirement for the extension of the credit or insurance that was--
(A) established before selection of the consumer for the offer of credit or insurance; and
(B) disclosed to the consumer in the offer of credit or insurance.

15 U.S.C. § 1681a (l). Moreover, Aegis argues that whether a firm offer of credit was made depends not just upon the initial communication, but on the entire context of the offer in question. (Def.'s Br. at 15-16 (citing *Cole v. U.S. Capital, Inc.*, 389 F.3d 719 (7th Cir. 2004).) In sum, Aegis argues that because most of the class members did not contact Aegis and inquire into all of the conditions attached to the mailing they received, they cannot assert that a firm offer of credit was not made to them.

Aegis' argument has nothing to do with standing. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). In order to have standing, a plaintiff must make out a "case or controversy" between himself and the defendant; that is, the plaintiff must allege that he has suffered "some threatened or actual injury" at the hands of the defendant and has a personal stake in the outcome of the controversy. *Id*. at 498-99. Moreover, the case must not run afoul of other "prudential limitations" on the court's exercise of jurisdiction. *Id*. at 498. Here, there is clearly a "case or controversy" between the class members and the defendant. The plaintiff alleges that the defendant accessed the class members' consumer reports without legal justification. That such conduct can constitute an "injury" is made clear by Congress' authorizing statutory damages for a violation. Therefore, the plaintiff has alleged that each class member has suffered an "injury" at the

9

hands of Aegis such that each class member has a personal stake in the outcome of the case. Whether the class members can ultimately prevail on their claims, i.e., by establishing that no firm offer of credit was made, is a separate question than whether they have standing to bring the claims.

Aegis is essentially arguing that they did make firm offers of credit to the class members, or that the class members cannot demonstrate that Aegis did not make them firm offers of credit. I agree with the plaintiff that Aegis' "standing" argument is simply an attempt to get the court to consider the merits of the case. "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 178 (1974). Aegis' argument that they did in fact make firm offers of credit to the class members, or that the class members cannot demonstrate that they did not, are more properly suited to a motion for summary judgment.

Aegis next argues, in a similar vein, that because a firm offer of credit must be judged on the entire context of the offer in question, an individualized assessment of each class member will be necessary to determine whether a firm offer of credit was made. Therefore, Aegis contends, common questions of fact or law do not predominate and class certification is improper. Aegis' argument is foreclosed by *Murray v. GMAC Mortgage Corporation*, 434 F.3d 948 (7th Cir. 2006). In *Murray*, the Seventh Circuit considered the propriety of class certification under circumstances almost identical in all material aspects to the case at hand. The class in *Murray* was approximately 1.2 million individuals whose credit information was accessed by GMACM and who were sent an offer by GMACM for a loan secured by a mortgage. The plaintiff contended that GMACM had accessed the class members' consumer information in violation of the FCRA and sought statutory damages.

GMACM contended that the loan offers were firm offers of credit, and therefore constituted a permissible purpose for accessing the consumer information. *Murray*, 434 F.3d at 950-51. The district court denied the plaintiff's motion to certify a class, but the court of appeals reversed.

Like Aegis, GMACM argued that a court "cannot know whether a 'firm offer of credit' has been made without examining every recipient's circumstances." *Id*. at 955. GMACM's argument was premised on *Cole v. U.S. Capital, Inc.*, 389 F.3d 719 (7th Cir. 2004), which held that whether an offer was a firm offer of credit depended in part on whether it had value to the customer. "[A]n offer of credit without value is the equivalent of an advertisement or solicitation." *Cole*, 389 F.3d at 727. The *Murray* court rejected GMACM's argument and held that "[w]e do not read *Cole*, however, to require a consumer-by-consumer evaluation. An offer has value to 'the consumer' if it is useful to the *normal* consumer." *Murray*, 434 F.3d at 955 (emphasis in original). In short, the *Murray* court rejected the argument that individualized assessments are necessary to determine whether a form letter constitutes a "firm offer of credit" under the FCRA. "To decide whether GMACM has adhered to the statute, a court need only determine whether the four corners of the offer satisfy the statutory definition (as elaborated in *Cole* ), and whether the terms are honored when consumers accept. These questions readily may be resolved for a class as a whole." *Id*. at 956.

To be clear, whether the Notice at issue in this case constitutes a firm offer of credit has yet to be determined. Nor has this court held that a determination of whether a firm offer of credit has been extended can be made solely on the face of the Notice alone. What *Murray* makes clear, however, is that an individualized assessment of the particular circumstances of each of the 106,000 class members will not be necessary to make the determination of whether firm offers of credit were

11

made.  Aegis' argument that a class action is untenable because such individualized assessments will be necessary therefore fails.

Aegis next argues that certification of a class would not be "superior to other available methods for the fair and efficient adjudication of the controversy" because of the position Aegis would be in were a class certified.  (Def.'s Br. at 29.)  Aegis contends that because, were a class certified, Aegis' potential liability would exceed its net worth, it would have to choose between going out of business or entering into a "blackmail settlement."  Aegis' argument is again foreclosed by the Seventh Circuit's decision in *Murray*.

In *Murray*, the class consisted of 1.2 million individuals, and GMACM was facing the same $100 to $1000 statutory damages pertinent here.  Nevertheless, the court held that the potentially huge damages were not a valid reason to deny class certification.  *Murray*, 434 F.3d at 953.

> The reason that damages can be substantial, however, does not lie in an "abuse" of Rule 23; it lies in the legislative decision to authorize awards as high as $1,000 per person, 15 U.S.C. § 1681n(a)(1)(A), combined with GMACM's decision to obtain the credit scores of more than a million persons.  Many laws that authorize statutory damages also limit the aggregate award to any class. . . .  Other laws, however, lack such upper bounds.  The Fair Credit Reporting Act is in the cap-free group.
>
> The district judge sought to curtail the aggregate damages for violations he deemed trivial.  Yet it is not appropriate to use procedural devices to undermine laws of which a judge disapproves.  Maybe suits such as this will lead Congress to amend the Fair Credit Reporting Act; maybe not.  While a statute remains on the books, however, it must be enforced rather than subverted.  An award that would be unconstitutionally excessive may be reduced, see *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003), but constitutional limits are best applied after a class has been certified.  Then a judge may evaluate the defendant's overall conduct and control its total exposure.  Reducing recoveries by forcing everyone to litigate independently-so that constitutional bounds are not tested, because the statute cannot be enforced by more than a handful of victims-has little to recommend it.

*Id*. at 953-54 (citations omitted).

Aegis attempts to distinguish *Murray* from the case at hand because it claims that Aegis' potential liability exceeds its net worth, while GMACM would have been able to "withstand the minimum statutory damage award." (Def.'s Br. at 35-36.)  To be sure, the *Murray* court did not state that GMACM's net worth was less than the potential damage award for the class, but neither did it explicitly state that GMACM could "withstand the minimum statutory damage award."  The minimum statutory damage award for the 1.2 million class members in *Murray* would have exceeded $100 million.  The district court judge termed the potential damages as "ruinously high."  *Murray*, 434 F.3d at 951.  In short, the distinction that Aegis attempts to make has no import.  In both cases the defendant faced potentially huge damage awards that could be ruinous.  In both cases the defendant would surely feel pressure to settle the case.  Nevertheless, the *Murray* court determined that the size of the potential damage award was not a proper reason to deny class certification.

Aegis also argues that the court's power to reduce constitutionally excessive awards referred to in *Murray* would not apply here because the statutory damages under 15 U.S.C. § 1681n are mandatory.  Suffice it to say, there is no distinction between the case at hand and *Murray* in this regard.  *Murray* dealt with the same statutory provisions that are applicable here.  In any event, *Murray* did not rely on possible constitutional limitations as its ultimate reason for finding that the amount of potential damages should not prevent class certification.  The *Murray* court primarily relied on the maxim that courts should not use procedural devices such as Rule 23 to undermine laws of which they disapprove.  *See Id*. at 953-54.

Finally, Aegis argues that *Murray* is inconsistent with earlier Seventh Circuit holdings such as *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir. 1995) and *Blair v. Equifax Check Services, Inc.*, 181 F.3d 832 (7th Cir. 1999).  (Def.'s Br. at 34.)  Whether there is any inconsistency

13

in the Seventh Circuit's holdings in this regard is for that court to determine. *Murray* is directly on point and was decided this year. The court in that case considered the same statutory provisions at issue here and nearly identical arguments regarding class certification in light of potentially huge statutory damage awards. Simply stated, even if this court were to conclude that *Murray* is inconsistent with earlier Seventh Circuit precedent, it is still binding on this court.

Having considered Aegis' arguments, the ultimate question this court must now decide is whether "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). First, I find that questions of law and fact common to the class do predominate over questions affecting individual members. Each class member was sent an identical or nearly identical form letter. Moreover, Aegis' practices regarding accessing consumer information are likely conducted in a standardized manner. Furthermore, the legal analysis necessary in determining whether the Notice constitutes a firm offer of credit will be common to all of the class members. Finally, it is most likely that questions regarding individual members of the class will be minimal.

I am also satisfied that a class action is superior to all other available methods for the fair and efficient adjudication of this controversy. It would hardly be efficient for 106,000 individuals to commence nearly identical law suits, especially considering the small amount of potential damages involved in each individual case. In the end, under facts almost indistinguishable from the case at hand, the Seventh Circuit stated, "Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray*, 434 F.3d at 953.

14

Case 2:05-cv-00848-WEC    Filed 08/17/06    Page 14 of 15    Document 61

In conclusion, and for all of the foregoing reasons, the plaintiff's motion to certify a class will be granted.

**NOW THEREFORE IT IS ORDERED** that the plaintiff's motion to certify a class be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that the following plaintiff class be and hereby is **CERTIFIED**:

> All persons with Wisconsin addresses to whom Aegis Lending Corporation sent a notice in the form of Exhibit A to this order, since November 20, 2004.

**IT IS FURTHER ORDERED** that on Wednesday, August 30, 2006, at 10:15 a.m., a further scheduling conference will be conducted in Room 253 of the United States Court House, 517 E. Wisconsin Ave., Milwaukee, Wisconsin, to discuss with the parties the steps necessary to further process this case.

**SO ORDERED** this 17th day of August 2006, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge